## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELI A. SCHROCK,
          Plaintiff,

          v.

NOMAC DRILLING, LLC,
          Defendant.

)
)
)
)  **2:15-cv-1692**
)
)
)
)

## MEMORANDUM OPINION

Pending before the Court is the MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S COMPLAINT (ECF No. 5) filed, along with a brief in support (ECF No. 6), by Defendant, Nomac Drilling, LLC. Plaintiff, Eli A. Schrock, has filed a brief in opposition (ECF No. 11), and Defendant has filed a reply brief (ECF No. 12). Accordingly, the motion is ripe for disposition.

## I.    Background

Plaintiff was employed by Defendant from September 2009 until November 2, 2015, working on various drilling rig sites in Pennsylvania, Ohio, and West Virginia. He initiated this action on December 23, 2015, raising claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, and Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

Defendant filed its motion to compel arbitration and to dismiss the complaint on February 19, 2016. As set forth in the declaration of Chase Moucka, an employee relations specialist with Defendant's parent company, Seventy Seven Corporation, Defendant's former parent company, Chesapeake Energy Corporation, promulgated an Arbitration Agreement and Dispute Resolution Policy ("DRP") in July 2011, which required arbitration of all employment-related disputes between employees and any of Chesapeake's subsidiaries and affiliates, including Defendant.

According to Mr. Moucka's declaration, "[a] full copy of the DRP was provided to each employee for review and signature and the executed signature page was then placed in each employee's personnel file." Moucka Decl. ¶ 3. Defendant has attached as an exhibit a signature page bearing Plaintiff's signature, which indicates that it was signed on July 29, 2011.

In June 2014, Defendant became a wholly owned subsidiary of Seventy Seven. The next month, Seventy Seven promulgated a virtually identical Arbitration Agreement and DRP, which undisputedly covers FMLA and Section 1981 claims. According to Mr. Moucka's declaration, the Agreement was sent to Defendant's employees via Adobe EchoSign, a cloud-based program that allows a sender to track the e-signing process in real time and, in turn, creates an audit trail logging events and actions taken by participants in the process. For employees with company e-mail addresses, the Arbitration Agreement and DRP was sent to their company e-mail. For those employees like Plaintiff without company e-mail addresses, the Agreement was sent to their supervisors' e-mail addresses or a general rig e-mail address. "Rig managers then had employees review and electronically sign the DRP. To verify their identity, employees had to enter the last four digits of their social security number in order to electronically sign the document." *Id.* ¶ 9. The EchoSign audit log reveals that Seventy Seven's Human Resources Department sent the Arbitration Agreement to Plaintiff at the e-mail address Nomac74@chk.com on July 1, 2014, and that Plaintiff electronically signed the Agreement on August 1, 2014 at 6:02 p.m. *Id.* ¶ 10. Defendant's payroll data confirms that Plaintiff was present at the rig when the Agreement was signed. *Id.* ¶ 11.

In a declaration attached to his response, however, Plaintiff denies that he ever agreed to arbitrate his claims. While he acknowledges that the signature page of the 2011 Chesapeake Arbitration Agreement and DRP contains his signature, he claims that "Defendant instructed

[him] to sign the signature page without providing [him] with a copy or allowing [him] an opportunity to review any of the other pages[.]" Pl. Decl. ¶ 2. Furthermore, he contends, "Defendant's rig managers would often pressure [him] to sign documents without giving [him] the opportunity to review the documents or consult with an attorney." *Id.* ¶ 3. Plaintiff also claims that he never electronically signed the 2014 version of the Agreement. *Id.* ¶ 8. He could not have done so, he contends, because he never had access to the e-mail account to which the Agreement was sent and never signed documents electronically during his time with Defendant. *Id.* ¶¶ 12-14.

## II.    Legal Standard

Under Section 2 of the FAA,

[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA, moreover, permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4.

"This provision establishes 'a liberal federal policy favoring arbitration agreements.'" *CompuCredit Corp. v. Greenwood*, --- U.S. ----, 132 S. Ct. 665 (2012) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). "The final phrase of § 2, however, permits arbitration agreements to be declared unenforceable 'upon such

3

grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. §

2). "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable

contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply

only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at

issue." *Id.* (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

Accordingly, when deciding a motion to compel arbitration, the court must address two

issues: (1) whether the parties have entered into a valid written agreement to arbitrate, and (2)

whether the dispute in question falls within the scope of that agreement. *Century Indemnity Co.*

*v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009); *Kirleis v. Dickie,*

*McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citing *Trippe Mfg. Co. v. Niles*

*Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005)). Once the court is "satisfied that the making of

the agreement for arbitration or the failure to comply therewith is not in issue, the court shall

make an order directing the parties to proceed to arbitration in accordance with the terms of the

agreement." 9 U.S.C. § 4.

The Third Circuit Court of Appeals fairly recently "clarif[ied] the standards to be applied

to motions to compel arbitration, identifying the circumstances under which district courts

should apply the standard for a motion to dismiss, as provided by Rule 12(b)(6) of the Federal

Rules of Civil Procedure, and those under which they should apply the summary judgment

standard found in Rule 56." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764,

767 (3d Cir. 2013). As the Court of Appeals instructed:

> when it is apparent, based on the face of a complaint, and documents relied upon
> in the complaint, that certain of a party's claims are subject to an enforceable
> arbitration clause, a motion to compel arbitration should be considered under a
> Rule 12(b)(6) standard without discovery's delay. But if the complaint and its
> supporting documents are unclear regarding the agreement to arbitrate, or if the
> plaintiff has responded to a motion to compel arbitration with additional facts

sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because the party opposing arbitration can demonstrate, by means of citations to the record," that there is "a genuine dispute as to the enforceability of the arbitration clause, the "court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same, as Section 4 of the FAA envisions.

*Id.* at 776 (internal citations and quotation marks omitted).

## III. Discussion

There is no dispute that Plaintiff's claims fall within the scope of the Arbitration Agreement and DRP. The parties' dispute instead focuses on whether Plaintiff ever actually agreed to arbitrate his claims.

"When determining whether a valid agreement to arbitrate exists, a court looks to the 'ordinary state-law principles that govern the formation of contracts.'" *Watson v. ScotlandYard Sec. Servs., Ltd.*, No. CIV.A. 12-1156, 2013 WL 5676771, at *2 (W.D. Pa. Oct. 18, 2013) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). "Pennsylvania law requires the following for contract formation: (1) mutual manifestation of an intention to be bound; (2) sufficiently definite terms; and (3) consideration." *Id.* Only the first of these requirements is at issue here. The Court, moreover, will only address whether Plaintiff assented to the terms of the 2014 version of the Arbitration Agreement and DRP. If he did, then under Paragraph 20 of the Agreement, this version "supersedes any prior agreement between [Plaintiff] and [Defendant]," including the 2011 Agreement. ECF No. 5-5 at 4.

Plaintiff contends that he could not have assented to the Agreement because he never received a copy of it or was given a chance to review it. Although Plaintiff acknowledges that the document contains an electronic signature, he claims that it is not his signature. As he explains,

the e-mail address to which the Agreement was sent was not his e-mail address – as Defendant concedes, it was the general rig address – and he could not access the e-mail account or the computer at the rig, so there is no way that he could have electronically signed the Agreement. Defendant has not specifically addressed Plaintiff's contentions. Its basic position, however, is that Plaintiff's electronic signature on the Agreement is valid, as verified by the presence of the last four digits of Plaintiff's social security number on the form and the fact that the evidence shows that Plaintiff was at work whenever the document was signed. The Court agrees.

Under Pennsylvania law, electronic signatures are to be given the same effect as written signatures. 73 P.S. § 2260.303(d). "An electronic record or electronic signature is attributable to a person if it was the act of the person." *Id.* § 2260.305. This "may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." *Id.* Consistent with these principles, "[o]ther courts have found valid and enforceable arbitration agreements exist even where a plaintiff submits a declaration speculating that the employer's copy of the electronic signature is fraudulent." *Jackson v. Univ. of Phoenix, Inc.*, No. 5:13-CV-736-BO, 2014 WL 672852, at *1 (E.D.N.C. Feb. 20, 2014) (citing *Morgan v. United Healthcare Servs., Inc.*, 2013 WL 1828940 (S.D. Ohio Apr. 30, 2013); *Castro Rosas v. Macy's, Inc.*, 2012 WL 3656274 (C.D. Cal. Aug. 24, 2012)). In *Jones-Mixon v. Bloomingdale's, Inc.*, for example, the district court found that electronic signature was valid inasmuch as the defendant "presented evidence that to sign the Acknowledgment Form, Plaintiff was required to twice enter her Social Security number, birth date and zip code, and would not have been able to electronically sign if the information was not matched correctly." No. 14-CV-01103-JCS, 2014 WL 2736020, at *5 (N.D. Cal. June 11, 2014). The court in *Jackson* came to a similar conclusion, on the basis that the

"defendant ha[d] security measures in place that protect[ed] an employee's access to his personal information including his human resources paperwork such as handbook acknowledgement forms." 2014 WL 672852, at *2.

The same is true in this case. As Defendant argues, Plaintiff would not have been able to electronically sign the Arbitration Agreement and DRP without correctly entering the last four digits of his social security number. There is also, as Defendant contends, evidence that Plaintiff was at the rig when the form was signed.[1] Taken together, this evidence indicates that it was Plaintiff, and not some other person – whom Plaintiff has not even attempted to identify – who electronically signed the form. Plaintiff's naked assertions that he never did so are insufficient to lead the Court to conclude otherwise. *See Jackson*, 2014 WL 672852, at *1 (finding that "plaintiff's loose allegation that his arbitration acknowledgement signature is fraudulent . . . is wholly unconvincing in light of defendant's evidence" of security measures that protected plaintiff's access to his personal information). Accordingly, Plaintiff has failed to create a genuine issue of fact as to whether he assented to the 2014 Arbitration Agreement and DRP.

That is not the end the matter, however. The 2014 version of the Arbitration Agreement and DRP provides that "[u]nless otherwise agreed to by the Employee and the Company, arbitration will take place in Oklahoma City, Oklahoma." ECF No. 5-5 at 3. Plaintiff argues that this clause renders the Agreement unenforceable (or, in the least, should be severed from the Agreement so arbitration can take place "somewhere in Pennsylvania"). This is so, he claims, because he "has never set foot in Oklahoma, every witness in this case is believed to reside over 1,000 miles from Oklahoma City in the Western District of Pennsylvania, and the cost to [him] to arbitrate in Oklahoma City would be extremely prohibitive." In support of the latter

---

1.    Plaintiff claims that he did not initial the Drilling Crew Payroll Data Form, but even so, that does not mean that Plaintiff was not present on the rig during his assigned work period.

contention, Plaintiff asserts the following in his declaration: after he was terminated by Defendant, he started working approximately 40 hours/week as a custodian making $10.50 an hour. Pl.'s Decl. ¶¶ 17, 18. "Because [his] wife has cervical cancer," he says that he "spend[s] a significant portion of [his] income and savings on [his] wife's health care." *Id.* ¶ 19. Furthermore, Plaintiff avers that, according to Expedia.com, "the cost of a round trip plan [sic] fare from Pittsburgh, Pennsylvania to Oklahoma City, Oklahoma is approximately $600." *Id.* ¶ 26. Because of his financial condition, Plaintiff claims that he "cannot afford to transport witnesses to Oklahoma City at that price or pay for their lodging expenses." *Id.* ¶ 27. "If [he] had to pay these amounts to bring [his] case," he concludes, "[he] would not be able to do so." *Id.* ¶ 28. Defendant counters that Plaintiff has failed to overcome the presumption of validity that attaches to contractual forum selection clauses. And, in any event, Defendant contends, it previously offered to arbitrate the case in Pittsburgh, but Plaintiff refused to go to arbitration.

Before addressing the merits of Plaintiff's contention, the Court must determine which standard to apply, as the parties have cited different authority on this point. Plaintiff relies on two separate lines of cases involving two distinct theories. One line of cases involves fee-splitting and fee-shifting arrangements in arbitration agreements, which courts analyze under the framework in *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000), and its progeny. The second line of cases involves forum selection clauses in contracts (not arbitration agreements), which are governed by *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), and its progeny. Defendant, on the other hand, relies solely on *M/S Bremen* in support of its argument that the forum-selection clause in the Agreement is valid and enforceable.

The Court is not convinced that either of these lines of cases supplies the rule here. *Green Tree* dealt only with the costs of the arbitration, not travel and other costs associated with

arbitrating in a faraway forum. 531 U.S. at 90-91. So, too, did the cases following *Green Tree* from the Courts of Appeals upon which Plaintiff relies. *See Blair v. Scott Specialty Gases*, 283 F.3d 595 (3d Cir. 2002) (fee-splitting provision); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 658 (7th Cir. 2003) (cost-splitting provision); *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 217 (3d Cir. 2003) (cost-splitting provision); *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 268 (3d Cir. 2003) ("loser pays" provision). The Agreement in this case, however, contemplates that Defendant will "pay any administrative fees and all expenses and fees of the arbitrator[,]" ECF No. 5-5 at 4, and Plaintiff is not arguing that the costs of arbitration, in and of themselves, will be prohibitively expensive. So it is not clear that *Green Tree* can provide Plaintiff any relief. Perhaps tellingly, Plaintiff has not cited any case that has so held.

By the same token, courts have held that *M/S Bremen* and other cases addressing "judicial forum selection clauses under federal law [are] inapposite with respect to the choice of situs expressed in an arbitration agreement because the Federal Arbitration Act provides the exclusive legal standard." *Coll. Park Pentecostal Holiness Church v. Gen. Steel Corp.*, 847 F. Supp. 2d 807, 813 n.2 (D. Md. 2012) (citing S*ilkworm Screen Printers, Inc. v. Abrams*, No. 91– 1631, 1992 WL 317187, at *4 (4th Cir. Nov. 4, 1992); *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 680–81 (5th Cir. 1976); *Nat. Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 332 (5th Cir. 1987); *Aspen Spa Properties, LLC v. Int'l Design Concepts*, *LLC*, 527 F. Supp. 2d 469, 472 (E.D.N.C. 2007)). Plaintiff, therefore, "cannot look to *M/S Bremen* . . . and its progeny to challenge the requirement that [he] arbitrate [his] claims in [Oklahoma City]." *Id.* (citing *Banks Channel LLC v. Brands*, 796 F. Supp. 2d 294, 296–97 (D.P.R. 2011)). "Rather . . . the enforceability of the arbitration clause at issue is governed exclusively by the explicit provisions of the Federal Arbitration Act." *Reisfeld*, 530 F.2d at 680. And under the FAA, the

only way to invalidate an agreement is through "generally applicable contract defenses, such as fraud, duress, or unconscionability . . . ." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Inasmuch as Plaintiff has not raised any of these defenses to the enforceability of the Agreement, the Court appears to be bound to enforce its terms as written, including the forum-selection provision.

Even assuming, however, that *Green Tree* and the other cases addressing fee-shifting or fee-splitting agreements are relevant, Plaintiff has not come within their requirements. "[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 91. The *Green Tree* Court "refrained from providing any guidance as to how detailed the showing of prohibitive expenses must be to support a finding that the agreement to arbitrate is invalid, since the plaintiff in *Green Tree* had not presented any evidence at all regarding the likelihood of incurring such costs." *Gillespie v. Colonial Life & Acc. Ins. Co.*, No. CIV A 08-689, 2009 WL 1885935, at *2 (W.D. Pa. June 30, 2009). Our Court of Appeals, however, has suggested that "a party seeking to declare a provision [in an arbitration agreement] unenforceable must proffer some credible and substantiated evidence of that party's financial situation as well as the specific costs of arbitration." *Hall v. Treasure Bay Virgin Islands Corp.*, 371 F. App'x 311, 313 (3d Cir. 2010) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 607 (3d Cir. 2002); *Parilla v. IAP Worldwide Serv.*, 368 F.3d 269, 283–85 (3d Cir. 2004)).

Plaintiff has not met this burden. First of all, he has made no real effort to establish how much more it would cost him to arbitrate his claims in Oklahoma City. For example, he has not offered an estimate as to how long the arbitration will last or how much his total expenses will

be, aside from claiming that airfare will cost him approximately $600 roundtrip.[2] Indeed, some

of the hardship that he claims he will experience may be avoided altogether. For instance, rather

than having his witnesses testify in person, he could present their testimony by video or through

their depositions. *See, e.g., Kepas v. eBay*, 412 F. App'x 40, 49 (10th Cir. 2010). It is also worth

noting again that Defendant has agreed to "pay any administrative fees and all expenses and fees

of the arbitrator," so, unlike the cases upon which Plaintiff relies, there is no risk that he will be

saddled with these costs.[3] ECF No. 5-5 at 4. With regard to Plaintiff's financial status, the

evidence of record is similarly lacking. Plaintiff says only that he now makes $10.50 an hour (as

reflected in one pay stub Plaintiff has submitted) and is required to expend much of his savings

and income on medical care for his wife. However, he has not provided the Court with any

documentation to support this assertion. In view of that, the Court concludes that Plaintiff has

failed to create a genuine issue of fact as to whether the costs of arbitration will be prohibitively

expensive.[4] *See Gillespie*, 2009 WL 1885935, at 5.

One issue remains, which neither side has addressed. "[U]nder the language of § 4, a

district court lacks the authority to order arbitration to proceed outside its own judicial district."

*Port Erie Plastics, Inc. v. Uptown Nails, LLC*, 173 F. App'x 123, 127 (3d Cir. 2006) (citing

---

2.      Plaintiff apparently conducted this search on February 23, 2016. The Court's own research reveals that flights now can be found for approximately $350 roundtrip.

3.      The fact that Defendant offered to arbitrate in Pittsburgh instead of Oklahoma City is irrelevant to the foregoing analysis. *See Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 285 (3d Cir. 2004).

4.      To the extent that Plaintiff believes that he is entitled to discovery on this issue, the Court disagrees. To be sure, the Third Circuit has recognized that it might be appropriate in certain circumstances to allow for limited discovery in order to allow a plaintiff to meet her burden of establishing the prohibitive costs of arbitration. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608-09 (3d Cir. 2002). *Blair*, however, is inapposite. Unlike in that case, Plaintiff "is and has been well aware of the requisite burden [he] must prove pursuant to *Green Tree*." *Gillespie v. Colonial Life & Acc. Ins. Co.*, No. CIV.A. 08-689, 2009 WL 890579, at *6 (W.D. Pa. Mar. 30, 2009). Nonetheless, he has not come forward with sufficient evidence regarding the costs of arbitration or evidence regarding his inability to pay, even though he is "sole custody" of this information. *Id.* Thus, the Court finds that Plaintiff "has had sufficient time to meet [his] burden under *Green Tree*, and has failed to provide any reason for the Court to grant [his] discovery request." *Id.*

*Econo–Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974)). In fact, "[f]ollowing *Econo-Car*, the majority of district courts to address the issue . . . have held that they lacked authority to compel arbitration at all, even in their own districts, when the agreement specifies that arbitration is to take place in a different venue." *Id.* (citations omitted). Faced with such a scenario, the Court can either dismiss the case outright so as to allow the party seeking to compel arbitration (i.e., Defendant) to bring the action in the proper district or transfer the case directly to that district, which can then stay the action and order the parties to arbitration. *See Johnson v. Ergon W. Virginia, Inc.*, No. CIV.A. 14-453, 2015 WL 5286234, at *9 (W.D. Pa. Sept. 10, 2015). Of course, the parties also remain free to agree to arbitrate the case in the Western District of Pennsylvania, and of the three options, this one seems like the most reasonable. Prior to choosing which of these options to take, however, the Court will give the parties an opportunity to be heard on the matter. *See Shafffer v. Graybill*, 68 F. App'x 374, 377 (3d Cir. 2003) (directing district court to either "dismiss the action or, after giving the parties the opportunity to be heard, transfer the action to an appropriate district court in New York where the court will presumably stay the action and direct arbitration").

IV.     **Conclusion**

For the reasons hereinabove stated, Defendant's MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S COMPLAINT (ECF No. 5) will be **DENIED** at this time. The parties shall jointly notify the Court via CM/ECF **on or before April 11, 2016**, as to how they wish to proceed. An appropriate order follows.

McVerry, S.J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELI A. SCHROCK,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:15-cv-1692** |
| | ) | |
| | ) | |
| **NOMAC DRILLING, LLC,** | ) | |
| **Defendant.** | ) | |
| | ) | |

## ORDER OF COURT

**AND NOW**, this 28th day of March, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that Defendant's MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S COMPLAINT (ECF No. 5) is **DENIED** at this time. The parties shall jointly notify the Court via CM/ECF **on or before April 11, 2016**, as to how they wish to proceed – i.e., whether (1) they want the Court to dismiss the action; (2) they want the Court to transfer the action to the United States District Court for the Western District of Oklahoma, where Defendant can then seek to stay the action and compel arbitration; or (3) whether they agree to arbitrate Plaintiff's claims in the Western District of Pennsylvania.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc:     all counsel of record via CM/ECF